**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JANE DOE 1 *et al.*,

      Plaintiffs,

vs.                                      Civ. No. 17-917 KK/LF

ESPANOLA PUBLIC SCHOOLS *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on: (1) Defendants' Motion for Summary Judgment on Jane Doe 2 and Jane Doe 4's Claims Based on Statute of Limitations (Doc. 72) ("Defendants' Motion"), filed June 18, 2018; and, (2) Plaintiffs' Motion to Estop Defendants from Use of the Affirmative Defense of the Statute of Limitations (Doc. 102) ("Plaintiffs' Motion"), filed August 10, 2018. The Court, having considered counsel's arguments, the record, and the relevant law, finds that the motions are not well taken and will be DENIED.

In this civil action, Plaintiffs allege that Defendant Gary Gregor sexually abused them when he was a teacher and they were students at Fairview Elementary School ("Fairview"), a school administered by Defendant Espanola Public Schools ("EPS"). (Doc. 46.) Plaintiffs also allege that Defendant Ruby Montoya, Fairview's principal, knew of Mr. Gregor's misconduct, failed to take steps to stop it, and discouraged others from reporting it. (*Id.*) Jane Does 1, 2, and 3 filed their initial complaint on September 7, 2017.[1] (Doc. 1.) On September 29, 2017, Plaintiffs filed first and second amended complaints adding Jane Doe 4 as a plaintiff. (Docs. 4, 5.) Plaintiffs filed a third amended complaint on May 9, 2018. (Doc. 46.) In their complaints, Plaintiffs assert claims: (1) against all Defendants for violation of Plaintiffs' Fourteenth Amendment substantive

---

[1] Jane Doe 3 has since dismissed her claims pursuant to a negotiated resolution. (Docs. 106, 110, 111, 124, 125.)

due process rights pursuant to 42 U.S.C. § 1983; (2) against EPS for a sexually abusive educational environment in violation of 20 U.S.C. §§ 1681-1688 ("Title IX"); and, (3) against EPS and Ms. Montoya for negligence pursuant to the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. §§ 41-4-1 *et seq.* (Doc. 46 at 51-58.) In the related motions now before the Court, Defendants seek summary judgment on the claims of Jane Does 2 and 4, arguing that these claims were filed after the statutes of limitations expired, while Plaintiffs seek to bar Defendants from asserting a statute of limitations defense. (Docs. 72, 102.)

## I.    MATERIAL FACTS

In their Motion, Defendants rely on the undisputed facts that Jane Doe 4 was born on October 20, 1997, and Jane Doe 2 was born on May 28, 1998. (Doc. 72 at 2; Doc. 92 at 2.)

In their response to Defendants' Motion, Plaintiffs make and support a number of factual allegations, all but one of which Defendants dispute[2] as "immaterial and irrelevant," or "legal conclusions which this Court must disregard." (Doc. 92 at 2-5; Doc. 122 at 3-4.) However, Defendants identify no dispute regarding the substance of these allegations or the evidence supporting them, and neither cite to nor attach materials to contradict them. (*See generally* Doc. 122.) The Court will therefore consider the following factual allegations as true for purposes of Defendants' Motion.

Mr. Gregor regularly sexually abused Jane Doe 4 during the 2007-2008 school year when she was a student in his fourth-grade class. (Doc. 92 at 2.) Mr. Gregor's sexual abuse of Jane Doe 4 included fondling her vagina under her clothing, rubbing into her vagina, touching her buttocks, and making her touch his clothed erection. (*Id.*)

---

[2] Defendants do not dispute that, "[a]fter hearing a troubling report about [Mr.] Gregor, Jane Doe 2's mother asked her not to be alone with him." (Doc. 92 at 3; Doc. 122 at 3-4.)

Jane Doe 4 began to exhibit "disordered behavior" soon after Mr. Gregor sexually abused her, including cutting herself with a razor blade and having suicidal thoughts. (*Id.* at 4; Doc. 93-6 at 16-17.) She struggled to concentrate and to tolerate people being close to or touching her, "started doing really bad drugs," and dropped out of high school after failing ninth grade three times. (Doc. 92 at 4; Doc. 93-2 at 2-4, 7; Doc. 93-6 at 17-18.) She tried but was unable to hold a job, and her mother kicked her out of the house. (Doc. 92 at 4; Doc. 93-2 at 4, 7.) An adult male subsequently sexually trafficked her, beat her, and fathered a child by her. (Doc. 92 at 4; Doc. 93-2 at 5; Doc. 93-6 at 20; Doc. 93-8.) She tried to abstain from drug use during her pregnancy but was unsuccessful and returned to the man who trafficked her after she gave birth, leaving her child with her mother. (Doc. 93-6 at 21.) A month before her nineteenth birthday, she was treated in an emergency room for a lorazepam overdose and acute alcohol intoxication. (Doc. 92 at 5; Doc. 93-9 at 1.)

Jane Doe 4's life between the ages of seventeen and twenty "was characterized by heavy, unremitting drug use[,] life on the streets, and incarceration." (Doc. 92 at 4; Doc. 93-6 at 19.) A thirty-day incarceration in early 2018 was "the longest period of sobriety that [she] had experienced [since] she was seventeen." (Doc. 92 at 5; Doc. 93-6 at 21-22.) In her expert report regarding Jane Doe 4, psychologist Barbara Hamm attributed Jane Doe 4's dysfunction and drug addiction to Mr. Gregor's sexual abuse of her and opined that Jane Doe 4 was "totally incapable of understanding the nature and effect of her injury, managing her affairs, or comprehending her legal rights until she became sober" in early 2018. (Doc. 92 at 4-5; Doc. 93-6 at 19-20, 24.)

Mr. Gregor sexually abused Jane Doe 2 during the 2008-2009 school year when she was a student in his fourth-grade class. (Doc. 92 at 2; *see* Doc. 93-1 at 5, 7.) Mr. Gregor touched Jane

Doe 2 inappropriately on multiple occasions, and on one occasion put his hand under her underwear and rubbed her genital area.  (Doc. 92 at 2; Doc. 93-1 at 5, 7; Doc. 93-4 at 19-20.)

Jane Doe 2 "never revealed her abuse by [Mr.] Gregor to anyone, and attributed all responsibility for the abuse squarely to herself," because she had "ignored her mother's directive not to be alone with [Mr.] Gregor or accept gifts from him."  (Doc. 92 at 3 (internal quotation marks omitted); Doc. 93-4 at 23-25.)  She "has never been angry with [Mr.] Gregor, only at herself, for 'allowing' the abuse to occur."  (Doc. 92 at 3; Doc. 93-4 at 23.)  She has coped with feelings of "shame, mortification, guilt and regret" by "putting the incidents firmly 'out of mind.'"  (Doc. 93-4 at 23-25.)

In her report regarding Jane Doe 2, Dr. Hamm opined that Jane Doe 2 not only sincerely believed she was responsible for the abuse, but also lacked the ability to understand that Mr. Gregor was responsible.  (*Id.* at 24-25.)  Dr. Hamm explained this inability generally in terms of the confusing and disruptive effect of sexual abuse on children's psychological development, (*id.* at 7-12), and specifically as to Jane Doe 2 because she at first enjoyed and accepted Mr. Gregor's "grooming" in contravention of her mother's directions.  (*Id.* at 18-19, 22-24.)  In Dr. Hamm's opinion, this caused Jane Doe 2 to become "'stuck' in her ability to address the traumatic childhood abuse" she experienced.  (*Id.* at 24.)  Thus, according to Dr. Hamm, Jane Doe 2

> did not, until recently (and perhaps still does not) understand the nature or effect of her sexual abuse by [Mr.] Gregor, and as a result, could not understand that she, having to her mind 'allowed' the abuse to occur, had legal rights to exercise in this situation. . . .
>
> Left to her own devices, given her inability to understand that the fault for her abuse lies squarely with the actual perpetrator and his enablers, it is highly unlikely that [Jane Doe 2] would have ever been able to comprehend that her legal rights had been violated, had she not been approached by legal counsel during the preparation of this lawsuit.

(*Id.* at 24-25.)

In their reply, Defendants present evidence of the following additional facts.

While still in Mr. Gregor's class, Jane Doe 4 told Ms. Montoya that Mr. Gregor was "touching on [her], not the way a man should be touching a little girl." (Doc. 122-2 at 3-4.) She disclosed Mr. Gregor's sexual abuse of her to a therapist in middle school. (*Id.* at 5.) She testified about the abuse at a hearing before the New Mexico Public Education Department ("PED").[3] (*Id.* at 3.) When she was eighteen or nineteen, she went to jail on prostitution charges and talked to investigators about the man who trafficked her. (*Id.* at 6-7.) She "did her time" in jail, and the prostitution charges were dismissed. (*Id.*) She began "talking to" her current attorney or someone from her attorney's office in 2013 or 2014. (*Id.* at 4, 8.) She has "never been scared to tell anybody" about Mr. Gregor's sexual abuse of her. (*Id.* at 4.) At the time of her deposition in May 2018, she was pursuing a GED and hoped to go to college and open a beauty salon. (*Id.* at 7, 9.) Also, she knew that her attorney had filed a lawsuit seeking damages on her behalf and that another of Mr. Gregor's former students had filed a lawsuit and received some money. (*Id.* at 2, 4.)

At the time of her deposition in June 2018, Jane Doe 2 had "graduated high school with a 3.7 GPA and [was] currently in college with a 4.0 GPA." (Doc. 122 at 11; Doc. 122-1 at 2-3.)

Plaintiffs did not attach any materials to their Motion; however, Defendants did attach materials to their response, and Plaintiffs to their reply. These materials evidence the following additional facts.

During her fourth-grade year, Mr. Gregor threatened Jane Doe 4 that he would "do something" to her or hurt her family if she told anyone about his sexual abuse of her, and she was scared to tell anyone. (Doc. 120-1 at 8, 11; Doc. 143-5 at 2.) When she told boys in her class what

---

[3] Other record evidence indicates that this testimony took place on December 17, 2010, when Jane Doe 4 was thirteen years old. (Doc. 72 at 2; Doc. 143-5 at 1.)

Mr. Gregor was doing to her, the boys told Mr. Gregor, and he yelled at her "in a really mean way" and told her not to tell lies. (Doc. 143-5 at 4.) After Jane Doe 4 and other girls told Ms. Montoya that Mr. Gregor was touching them inappropriately, Ms. Montoya told them that he was a good friend and she knew he wouldn't do that. (Doc. 143-6 at 2, 4.) Soon afterward, Ms. Montoya went to Mr. Gregor's classroom and told his students they shouldn't make "false accusations" or "lie about things like that." (*Id.* at 3.) Jane Doe 4 had no further contact with Ms. Montoya. (Doc. 120-1 at 9.) After her fourth-grade year, she did occasionally see Mr. Gregor in the hallway as a student at Fairview, but she had no further contact with him until he was indicted.[4] (Doc. 120-1 at 7, 9.)

Jane Doe 4's mother expressed concerns about Mr. Gregor's behavior to Ms. Montoya several times during the 2007-2008 school year. (Doc. 143-2 at 2-3.) The behavior she reported included Mr. Gregor inviting Jane Doe 4 to his home for sleepovers, giving her gifts, calling her daily at her home, and giving her candy for sitting on his lap. (*Id.*) In response, Ms. Montoya told Jane Doe 4's mother not to do anything and that she, Ms. Montoya, would take care of everything. (*Id.*) In the second half of the school year, Jane Doe 4 told her mother that Mr. Gregor had been touching her and her friends in their private parts throughout the year. (*Id.* at 4.) Jane Doe 4's mother reported this disclosure to Ms. Montoya. (*Id.*) In response, Ms. Montoya told Jane Doe 4's mother that other students had also complained about Mr. Gregor touching them, that Jane Doe 4's mother should not tell anyone else, and that she, Ms. Montoya, would tell the police and "the office that was in charge of the schools" and would "take care of it." (*Id.*) Jane Doe 4's mother believed Ms. Montoya when she said she would take care of it. (*Id.*)

---

[4] Mr. Gregor has been indicted in several criminal cases in New Mexico; the Court takes judicial notice that the earliest of these appears to have been filed in April 2017. *New Mexico v. Gregor*, Case No. D-117-CR-201700128 (N.M. 1st Jud. Dist. Ct.).

Jane Doe 2's mother noticed that, once in Mr. Gregor's fourth-grade class, her daughter was unhappy at school and no longer wanted to wear skirts. (Doc. 143-7 at 2.) Jane Doe 2's mother went to Mr. Gregor's classroom and asked to talk to him about her daughter. (*Id.*) Mr. Gregor responded that he did not speak Spanish. (*Id.*) Jane Doe 2's mother then took her daughter to Ms. Montoya's office and asked Ms. Montoya to move her daughter to a different class. (*Id.*) Jane Doe 2's mother explained that her daughter was unhappy and uncomfortable in Mr. Gregor's class and that he would not talk to her about her daughter. (*Id.*) Ms. Montoya refused to move Jane Doe 2, telling her mother that there wasn't room in any other class, and to "just give [Jane Doe 2] time. She just needs to get used to it. She's just not used to it." (*Id.* at 2-3.) Jane Doe 2's mother therefore moved her daughter from Fairview to a different school. (*Id.*) Jane Doe 2 had no contact with Mr. Gregor or Ms. Montoya after her mother removed her from Fairview. (Doc. 120-2 at 2; Doc. 143-9 at 3.) Jane Doe 2 did not tell anyone about Mr. Gregor's sexual abuse of her until her mother showed her a newspaper article about Mr. Gregor's alleged abuse of other students, at which time she told her mother.[5] (Doc. 120-2 at 6-7.)

Jane Does 2 and 4 knew at the time Mr. Gregor sexually abused them that what he was doing was wrong. (Doc. 120-1 at 10-11; Doc. 120-2 at 3-5.) Jane Doe 2 did not approach an attorney regarding Mr. Gregor's sexual abuse of her; rather, her current counsel contacted her.[6] (Doc. 92 at 4; Doc. 120-2 at 7.)

---

[5] Jane Doe 2 could not recall in what year she made this disclosure. (Doc. 120-2 at 6-7.)

[6] Defendants contend that Jane Doe 4 also did not approach an attorney regarding Mr. Gregor's sexual abuse of her, and that her current counsel contacted her. (Doc. 120 at 9.) However, the exhibits Defendants cite do not support their contention. (*Id.*; *see* Doc. 120-1 at 3-4.)

## II.  ANALYSIS

### A.  Defendants' Motion

In their Motion, Defendants argue that they are entitled to summary judgment on the claims of Jane Does 2 and 4 because these Plaintiffs filed their claims after the applicable statutes of limitations expired.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (internal quotation marks omitted).  If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to her. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

1.    Section 1983 and Title IX Claims

In their Motion, Defendants first argue that the statute of limitations bars the Section 1983 and Title IX claims of Janes Does 2 and 4.  To resolve this issue, the Court must first determine which statute of limitations applies to these claims.  Notwithstanding Plaintiffs' arguments to the contrary, Tenth Circuit law regarding the applicable statute of limitations is clear.  "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).  If "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure,* 488 U.S. 235, 250 (1989).  Thus, "for § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014); *see* N.M. Stat. Ann. § 37-1-8 ("Actions must be brought . . . for an injury to the person . . . within three years.").  The same statute of limitations applies to Title IX claims arising in New Mexico.  *Varnell*, 756 F.3d at 1213.

Federal courts also apply state law in deciding "closely related questions of tolling" in Section 1983 and Title IX actions.[7]  *Id.* at 1212.  However,

> the state tolling provisions adopted for actions under § 1983 should not depend on the particular facts or the precise legal theory of the claim.  Only generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983.

---

[7] "[T]he time of accrual of a § 1983 claim," in contrast, "is a matter of federal law *not* resolved by reference to state law.  The same is true of a claim under Title IX."  *Varnell*, 756 F.3d at 1215 (emphasis in original) (internal citation and quotation marks omitted).

*Id.* at 1212-13 (internal quotation marks and citation omitted).

The plaintiff in *Varnell* brought Section 1983 and Title IX claims based on her school coach's sexual abuse of her as a minor. *Id.* at 1211. She argued that the court should apply Section 37-1-30 of the New Mexico Statutes Annotated to her federal claims as either a statute of limitations or a tolling provision. *Id.* Section 37-1-30 provides that

> [a]n action for damages based on personal injury caused by childhood sexual abuse shall be commenced by a person before the latest of the following dates:
>
> > (1) the first instant of the person's twenty-fourth birthday; or
> >
> > (2) three years from the date that a person first disclosed the person's childhood sexual abuse to a licensed medical or mental health care provider in the context of receiving health care from the provider.
>
> The provisions of Section 37-1-8 NMSA 1978 and any statutes of limitations therein shall not apply to causes of action for childhood sexual abuse.

N.M. Stat. Ann. § 37-1-30.[8]

The Tenth Circuit squarely rejected the plaintiff's argument, reasoning that Section 37-1-30 fails the "general-applicability requirement" of *Wilson* and *Owens*, whether as a statute of limitations or a tolling provision. *Varnell*, 756 F.3d at 1213.

> It would no less frustrate the federal interest in uniformity and the interest in having firmly defined, easily applied rules were we to obediently apply the residual statute of limitations, only to then adopt a tort-specific tolling provision. Such a holding would succeed only in transferring the confusion over the choice among multiple statutes of limitations to a choice among multiple tolling provisions.

---

[8] This version of Section 37-1-30 was in effect when Plaintiffs filed suit in September 2017, and so is the version that the Court would apply to their claims. *Grygorwicz v. Trujillo*, 2006-NMCA-089, ¶ 16, 140 N.M. 129, 133-34, 140 P.3d 550, 554-55 (absent exceptional circumstances not applicable here, "the statute of limitations in effect at the time an action is filed governs the timeliness of the claim"). An earlier version of the statute required suit to be filed before the latest of a person's twenty-fourth birthday or "three years from the date of the time that a person knew or had reason to know of the childhood sexual abuse and that the childhood sexual abuse resulted in an injury to the person, as established by competent medical or psychological testimony." N.M. Stat. Ann. § 37-1-30(A) (repealed Apr. 6, 2017).

*Id.* at 1213 (quoting *Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577, 580 (9th Cir. 2012)) (brackets, citation, and internal quotation marks omitted).

Like the plaintiff in *Varnell*, Plaintiffs urge the Court to apply Section 37-1-30 to the federal claims of Jane Does 2 and 4, as either a statute of limitations or a tolling provision. Plaintiffs assert several arguments in support of their position, including that the Court should follow "the clear directives of the New Mexico legislature that survivors of childhood sexual abuse ought not to be held to the same limitations period" as other plaintiffs; that the Tenth Circuit's unpublished decision in *Cosgrove v. Kansas Department of Social and Rehabilitation Services*, 162 F. App'x 823 (10th Cir. 2006), supports their position; and, that the Court should defer to the policy considerations "that have resulted in jurisdictions across the United States creating separate statutes of limitations for child sex abuse victims." (Doc. 92 at 10-14.)

However persuasive any of these arguments might otherwise be, *Varnell* requires the Court to reject them. *Varnell* is a published Tenth Circuit decision addressing federal claims and the Court must therefore follow it. *See, e.g., Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (noting "the general rule that a district court is bound by decisions made by its circuit court"); *see also Doe v. Albuquerque Pub. Schs.*, Civ. No. 18-00085 WJ/KK, 2018 WL 4080684, at *3 (D.N.M. Aug. 27, 2018) (declining to apply Section 37-1-30 to plaintiff's federal claims based on childhood sexual abuse in light of *Varnell*). Moreover, the *Varnell* court specifically declined to follow *Cosgrove*, noting that "[u]npublished decisions are not precedential." 756 F.3d at 1213.

Plaintiffs also argue that applying New Mexico's general personal injury statute of limitations to a student sexually abused by a public school teacher violates equal protection, because Section 37-1-30's more generous statute of limitations would apply to an otherwise

similarly situated student abused by a private school teacher.  This argument, though the *Varnell* court does not appear to have considered it, must also fail.  "The government violates the Equal Protection Clause when it treats someone differently than another who is similarly situated without a rational basis for the disparate treatment."  *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031-32 (10th Cir. 2007) (internal quotation marks omitted).  Under rational basis scrutiny, courts must uphold differential treatment "so long as it is rationally related to a legitimate government purpose or end."  *Id.*

At the outset, the Court notes that a student sexually abused by a public school teacher is not similarly situated to a student sexually abused by a private school teacher, in the sense that a student suing a public school teacher can state federal constitutional claims under Section 1983, while a student suing a private school teacher likely cannot.  *See Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (privately operated school not state actor subject to suit under Section 1983).  And, to the extent that Title IX applies to private schools, there is no differential treatment:  the statute of limitations would be the same for Title IX claims against both public and private school teachers.  However, even if *Varnell* did result in the differential treatment of similarly situated students, the Tenth Circuit in that case specifically identified the federal courts' legitimate government purpose in applying a state's general personal injury statute of limitations to Section 1983 and Title IX claims regardless of the particular facts or precise legal theory of the claims.  Specifically, that purpose is to make "the identification of the appropriate statute of limitations . . . an uncomplicated task for judges, lawyers, and litigants, rather than a source of uncertainty, and unproductive and ever-increasing litigation."  756 F.3d at 1212.  Plaintiffs have identified no caselaw holding that applying a state's general personal injury statute of limitations to Section 1983 and Title IX claims violates the Equal Protection Clause, and the Court will not create such caselaw here.

Although Section 37-1-30 does not apply to Plaintiffs' federal claims, New Mexico's general tolling statute regarding minority and incapacity does. *Varnell*, 756 F.3d at 1214. According to that statute,

> [t]he times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors and incapacitated persons, be extended so that they shall have one year from and after the termination of such incapacity within which to commence said actions.

N.M. Stat. Ann. § 37-1-10. The parties agree that, because Jane Does 2 and 4 were minors when Mr. Gregor allegedly sexually abused them, Section 37-1-10 extended the statute of limitations to their nineteenth birthdays. However, as Defendants observe, this does not salvage Plaintiffs' federal claims, because Jane Doe 4 turned nineteen on October 20, 2016, and Jane Doe 2 turned nineteen on May 28, 2017, but Plaintiffs did not file suit until September 7, 2017 at the earliest.

Plaintiffs assert that Jane Does 2 and 4 nevertheless timely filed their federal claims because they were until recently "incapacitated persons" under Section 37-1-10. "[T]he party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position." *City of Carlsbad v. Grace,* 1998-NMCA-144, ¶ 8, 126 N.M. 95, 98, 966 P.2d 1178, 1181. Although Section 37-1-10 does not define the term "incapacitated person," under New Mexico's Probate Code it

> means any person who demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he is unable to manage his personal care or he is unable to manage his property and financial affairs.

N.M. Stat. Ann. § 38-4-14; *see JM through Foley v. N.M. Dep't of Health*, Civ. No. 07-0604 RB/ACT, 2008 WL 11409153, at *4 (D.N.M. Dec. 31, 2008) (relying on Section 38-4-14 to interpret the term "incapacitated persons" under Section 37-1-10). Similarly, according to the New Mexico Court of Appeals, a person's incapacity will "defeat the application of a time to sue

provision" when he is "unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." *Lent v. Emp't Sec. Comm'n of State of N.M.*, 1982-NMCA-147, ¶¶ 12-13, 99 N.M. 407, 410, 658 P.2d 1134, 1137.

Plaintiffs argue that Jane Doe 4 was unable to manage her personal care or business affairs, and was thus incapacitated under Section 37-1-10, from childhood until early 2018. The Court agrees that Plaintiffs have presented sufficient evidence to demonstrate genuine issues of material fact on this point. As discussed in Section I, *supra*, Plaintiffs' evidence demonstrates that, after Mr. Gregor sexually abused her, Jane Doe 4 cut herself, had suicidal thoughts, struggled to concentrate and to tolerate people touching her, dropped out of high school, was unable to hold a job, became addicted to drugs, was kicked out of her home, sexually trafficked, and physically abused, and lost custody of her child. By the age of seventeen, her life "was characterized by heavy, unremitting drug use[,] life on the streets, and incarceration." (Doc. 93-6 at 19.) Plaintiffs' expert opined that Jane Doe 4 was totally incapable of managing her affairs until she became sober in early 2018.

The bulk of Defendants' countervailing evidence concerns Jane Doe 4's capacity at the time of her deposition, and so fails to contradict Plaintiffs' evidence that she was incapacitated before then. That Jane Doe 4, after she became sober in 2018, began pursuing a GED and hoped to go to college and open a beauty salon says little about her capacity during the year before she filed suit, when she was, allegedly, still regularly and heavily using drugs. Defendants do point out evidence that at eighteen or nineteen, Jane Doe 4 talked to investigators about the man who trafficked her, which may have aided in the dismissal of prostitution charges against her. Defendants can certainly attempt to offer this evidence at trial to challenge Jane Doe 4's claim of incapacity. However, viewing the record in the light most favorable to Plaintiffs, the evidence on

which Defendants rely does not eliminate the genuine, material factual disputes between the parties.

Defendants also argue that Jane Doe 4 should not be permitted to "dictate" when the statute of limitations on her claims will expire "through drug use." (Doc. 122 at 15.) The Court rejects this argument for two reasons. First, the Court doubts that anyone would subject herself to the dangerous and painful experiences Jane Doe 4 allegedly endured due to her addiction in order to influence or control the tolling of a statute of limitations. Second, Section 38-4-14 suggests that incapacity due to drug addiction *can* toll the statute of limitations under Section 37-1-10, and Defendants have identified no authority suggesting otherwise. N.M. Stat. Ann. § 38-4-14 (under Probate Code, person may be "incapacitated" from "chronic use of drugs"); *see also Hess v. Fuller*, No. CIV.A. 88-2272-O, 1990 WL 37608, at *4 (D. Kan. Mar. 28, 1990) (whether plaintiff's drug and alcohol addictions rendered him "incapacitated" under Kansas tolling provision was "a disputed question of material fact, making summary judgment inappropriate"). In sum, the Court finds that there are genuine issues of material fact regarding whether Jane Doe 4 was incapacitated from childhood until early 2018, and thus whether the statute of limitations applicable to her federal claims was tolled when she filed those claims on September 29, 2017. The Court will therefore deny Defendants' Motion as to these claims.

The Court will also deny Defendants' Motion as to Jane Doe 2's federal claims. As discussed above, a plaintiff may demonstrate incapacity under Section 37-1-10 by showing either that she is unable to manage her personal care and business affairs, or that she is unable to comprehend her legal rights or liabilities. *Lent*, 1982-NMCA-147 at ¶¶ 12-13, 99 N.M. at 410, 658 P.2d at 1137; *see also Doe v. Roe*, 955 P.2d 951, 964 (Ariz. 1998) (There are "two separate inquiries that may evince an unsound mind: (1) inability to manage daily affairs, and (2) inability

to understand legal rights and liabilities."). The parties appear to agree that, from the time she reached adulthood, Jane Doe 2 has been and remains able to manage her personal care and business affairs. However, Plaintiffs contend, and present evidence to support their contention, that until recently Jane Doe 2 was unable to comprehend her legal rights regarding Mr. Gregor's sexual abuse of her as a child. According to this evidence, Jane Doe 2 until recently blamed herself, and not Mr. Gregor, for the abuse, and has coped with feelings of guilt and shame by putting the incidents out of her mind. She did not disclose the abuse until others approached her about it. In the opinion of Plaintiffs' expert, she "until recently . . . could not understand that she, having to her mind 'allowed' the abuse to occur, had legal rights to exercise in this situation." (Doc. 93-4 at 24.)

In support of their position that this evidence demonstrates Jane Doe 2's incapacity, Plaintiffs rely on *Doe v. Roe*, 955 P.2d at 951. In *Doe v. Roe*, the Supreme Court of Arizona found genuine issues of material fact regarding whether the plaintiff, a victim of childhood sexual abuse, was unable to understand her legal rights and therefore of unsound mind within the meaning of a state tolling provision. *Id.* at 967. The plaintiff's evidence in that case showed that she

> repressed memories of abuse . . . ; she was in denial that any abuse took place, was unable to accept that the events had occurred, and was unable to articulate them; she experienced feelings of complicity with her abuser (evidencing, perhaps, that she did not understand that a wrong had occurred); and she experienced feelings of responsibility and guilt for the abuse (same).[9]

*Id.*

---

[9] The *Doe v. Roe* court also found genuine issues of material fact regarding whether the plaintiff was of unsound mind because she was "unable to carry on the day-to-day affairs of life," where she "experienced suicidal ideation," "required psychological and psychiatric therapy and treatment as well as institutionalization for her mental condition," "had to quit her job," and "was unable to seek other employment." 955 P.2d at 965.

Defendants, in contrast, rely on *Varnell* to support their position that Jane Doe 2 was not incapacitated as a matter of law. The *Varnell* plaintiff argued that the court should toll the statute of limitations applicable to her federal claims because she was incapacitated under Section 37-1-10. 756 F.3d at 1214. However, the court concluded that "a rational trier of fact could not find that [the p]laintiff had shown that she was unable to. . . comprehend her legal rights during the year before suit was filed." *Id.* According to the court,

> almost two years before this suit was filed[], when, on the advice of her mentor, she told her mother of the abuse, [the plaintiff] was certainly able to discuss the abuse with others and she was aware that [the perpetrator's] conduct was criminal, that other girls could be harmed if she did not come forward, that what happened was not her fault, and that she had a duty to tell others what had happened.

*Id.*

The record evidence regarding Jane Doe 2 falls somewhere between *Doe v. Roe* and *Varnell*. On the one hand, the evidence shows that Jane Doe 2 put the abuse out of her mind and disclosed it to no one until approached about it, "experienced feelings of responsibility and guilt for the abuse," and "could not understand that she . . . had legal rights to exercise in this situation." *Doe v. Roe*, 955 P.2d at 967; (Doc. 93-4 at 24). On the other hand, the evidence shows that Jane Doe 2 knew at the time Mr. Gregor sexually abused her that what he was doing was "wrong." (Doc. 120-2 at 3-5.) Although it is a close question, the Court finds that this case is factually more like *Doe v. Roe* than *Varnell*. Viewing the disputed facts in the light most favorable to Plaintiffs, a rational factfinder could conclude that Jane Doe 2 was unable to understand her legal rights with respect to Mr. Gregor's abuse of her up to and during the year before she filed suit. In making this determination, the Court relies particularly on Plaintiffs' expert's testimony that Jane Doe 2 not only failed to understand her legal rights, but also was actually incapable of doing so, due to the unique factual circumstances of Mr. Gregor's grooming and abuse of her as well as the impact of sexual abuse on children generally. For these reasons, the Court finds that there are genuine issues

of material fact regarding whether Jane Doe 2 timely filed her federal claims because she was

incapacitated under Section 37-1-10 until after September 7, 2016.[10]

## 2. Negligence Claims under the NMTCA

Defendants also argue that the NMTCA's two-year statute of limitations bars the

negligence claims of Jane Does 2 and 4. This statute provides that

> [a]ctions against a governmental entity or a public employee for torts shall be
> forever barred, unless such action is commenced within two years after the date of
> occurrence resulting in loss, injury or death, except that a minor under the full age
> of seven years shall have until his ninth birthday in which to file. This subsection
> applies to all persons regardless of minority or other legal disability.

N.M. Stat. Ann. § 41-4-15. Plaintiffs do not dispute that Section 41-4-15 applies to their

negligence claims,[11] nor do they dispute that Jane Does 2 and 4 failed to comply with its terms.[12]

In light of Plaintiffs' minority and alleged incapacity, however, this does not end the

inquiry. To satisfy the New Mexico Constitution's Due Process Clause, a limitations period must

---

[10] Plaintiffs' evidence is somewhat imprecise regarding when Jane Doe 2's alleged incapacity terminated. For example, in her July 2018 report, Plaintiffs' expert opined that Jane Doe 2 could not "until recently (and perhaps still does not)" understand her legal rights with respect to Mr. Gregor's abuse of her. (Doc. 93-4 at 24.) Nevertheless, viewed in the light most favorable to Plaintiffs, this evidence does support the inference that Jane Doe 2's alleged incapacity terminated sometime after September 7, 2016, which would make her federal claims timely filed.

[11] Plaintiffs have not argued that Section 37-1-30 governs NMTCA claims based on childhood sexual abuse. The Court will not decide whether Section 37-1-30 governs such claims absent a request for it to do so or any briefing on the subject. *Cf. Campos v. Murray*, 2006-NMSC-020, ¶¶ 16-17, 139 N.M. 454, 458, 134 P.3d 741, 745 (finding it unnecessary to decide whether Section 37-1-30 governed the plaintiff's NMTCA claims based on childhood sexual abuse).

[12] In particular, Plaintiffs have not argued that the NMTCA claims of Jane Does 2 and 4 accrued on a date later than the last date on which Mr. Gregor sexually abused them. The Court notes that Section 41-4-15 constitutes "a discovery rule that accrues when a plaintiff has discovered the relevant facts to establish a legal cause of action," rather than "an occurrence rule" that runs from the date on which the alleged tortious misconduct occurred. *Maestas v. Zager*, 2007-NMSC-003, ¶ 10, 141 N.M. 154, 157, 152 P.3d 141, 144. Applying a discovery rule to claims against a private party based on childhood sexual abuse, the New Mexico Court of Appeals has held that a "cause of action does not accrue until the plaintiff knows or should reasonably have discovered that she has suffered appreciable harm from the defendant's misconduct." *Martinez-Sandoval v. Kirsch*, 1994-NMCA-115, ¶ 23, 118 N.M. 616, 621-22, 884 P.2d 507, 512-13 (internal citations omitted). Because Plaintiffs have made no argument regarding when the negligence claims of Jane Does 2 and 4 accrued, the Court will not speculate about whether they might have accrued within two years of the dates on which Plaintiffs filed suit. However, the Court notes that Plaintiffs are not precluded from making such an argument at a later stage of the litigation, if appropriate.

provide a reasonable amount of time for a cause of action to be brought. *Garcia v. La Farge*, 1995-NMSC-019, ¶ 33, 119 N.M. 532, 541, 893 P.2d 428, 437, *overruled on other grounds by Cahn v. Berryman*, 2018-NMSC-002, 408 P.3d 1012; *see* N.M. Const. art. II, § 18 ("No person shall be deprived of life, liberty or property without due process of law."). "The reasonableness inquiry looks at how the limitation or provision affects the claimant. . . . [T]here is no amount of time that is per se reasonable or unreasonable in all situations." *Jaramillo v. Heaton*, 2004-NMCA-123, ¶ 11, 136 N.M. 498, 502, 100 P.3d 204, 208.

> Due process is not a technical abstraction unrelated to time, place, and circumstances, but rather an embodiment of fundamental ideas of fair play and justice. Due process . . . is a malleable principle which must be molded to each situation, considering both the rights of the government and the rights of the individual.

*Erwin v. City of Santa Fe*, 1993-NMCA-065, ¶ 8, 115 N.M. 596, 599, 855 P.2d 1060, 1063 (internal citations and quotation marks omitted).

New Mexico law is well settled regarding a minor's due process right to a reasonable amount of time to bring a claim under the NMTCA. "[A]s a matter of due process, a child who is incapable of meeting a statutory deadline cannot have that deadline applied to bar the child's right to legal relief." *Campos v. Murray*, 2006-NMSC-020, ¶ 13, 139 N.M. 454, 457, 134 P.3d 741, 744 (quoting *Jaramillo v. Bd. of Regents of Univ. of N.M. Health & Scis. Ctr.*, 2001-NMCA-024, ¶ 10, 130 N.M. 256, 258, 23 P.3d 931, 933).

> [C]ases involving children do not focus on the absolute or relative length of time of the [statute of limitations] requirement, and instead focus on whether it is reasonable to expect a person in the injured child's circumstances to be able to meet the requirement.

*Id.* at ¶ 10, 139 N.M. at 457, 134 P.3d at 744 (quoting *Jaramillo*, 2001-NMCA-024 at ¶ 7, 130 N.M. at 258, 23 P.3d at 933). "[T]here can be factual situations, such as a teenage victim who has legal representation, where it is reasonable to expect a child to be able to meet the requirements of

. . . the [NMTCA's] two-year statute of limitations." *Id.* (internal quotation marks and citation omitted); *see also Rider v. Albuquerque Pub. Schs.*, 1996-NMCA-090, ¶ 15, 122 N.M. 237, 241, 923 P.2d 604, 608 ("[T]rial courts may recognize a disputed question of fact . . . when there is evidence from the child's maturity of an ability to protect his or her legal rights or perhaps when someone has been specifically hired or appointed to protect those rights."). Nevertheless, "[a] two-year-old, an eight-year-old, or even an eleven-year-old, are all equally unable to comply with the [NMTCA's] statute of limitations requirement at such a young age." *Campos*, 2006-NMSC-020 at ¶ 14, 139 N.M. at 457-58, 134 P.3d at 744-45.

Here, there is evidence that Jane Does 2 and 4 were about ten years old when Mr. Gregor sexually abused them, and there is no evidence that they were represented by counsel or otherwise mature enough to protect their legal rights by the age of twelve, the age they would have been when Defendants claim the NMTCA's two-year statute of limitations expired. N.M. Stat. Ann. § 41-4-15. Thus, at best, there are genuine issues of material fact regarding whether applying this statute of limitations to Plaintiffs' negligence claims would violate due process. *Campos*, 2006-NMSC-020 at ¶¶ 13-14, 139 N.M. at 457-58, 134 P.3d at 744-45; *see* footnote 12. Defendants do not dispute this point.[13] (Doc. 122 at 15.) Rather, they argue that "the general statute of limitations period [under Sections 37-1-8 and 37-1-10] should apply" and that these provisions bar Plaintiffs'

---

[13] Defendants do claim that counsel represented Jane Doe 4 by 2013, arguing that "[m]inors['] and incapacitated persons' rights are not violated under due process of law when they are represented by legal counsel and the statute of limitations runs." (Doc. 122 at 17.) As noted above, whether a minor has representation before the statute of limitations expires is a fact the Court must consider in determining whether application of that statute to the minor's claims would violate due process. At present, however, Plaintiffs have not disputed that, as to Jane Doe 4, the NMTCA's two-year statute of limitations expired before 2013. In addition, the evidence on which Defendants rely is insufficient to show the absence of a genuine issue of material fact regarding whether counsel represented Jane Doe 4 by 2013. *Adler*, 144 F.3d at 670-71. Defendants rely solely on Jane Doe 4's deposition testimony that she began "talking to" her current counsel in 2013 or 2014. (Doc. 122-2 at 4, 8.) Defendants are correct that "[n]o formal contract, arrangement or attorney fee is necessary to create the relationship of attorney and client." *Holland v. Lawless*, 1981-NMCA-004, ¶ 5, 95 N.M. 490, 494, 623 P.2d 1004, 1008. However, the "mere fact" that an attorney discussed a legal matter with a person is "not enough to establish the relationship," and this "mere fact" is all Defendants' evidence shows. *Id.* at ¶ 9, 95 N.M. at 495, 623 P.2d at 1009.

negligence claims.  (*Id.* at 16.)  In the alternative, Defendants argue that, if the "appropriate statute of limitation[s]" for Jane Doe 4's negligence claims is Section 37-1-30, "it has run."  (*Id.* at 18.)

If the Court ultimately determines that applying Section 41-4-15 to Plaintiffs' negligence claims violates due process, the Court would then have to determine what limitations period should apply instead.  No New Mexico case has decided what time limitation applies to a plaintiff's claims under the NMTCA when application of Section 41-4-15 would violate due process.[14]  However, the Court need not decide which limitations period to apply in lieu of Section 41-4-15 at this time, because it finds that Defendants' Motion should be denied using either of the alternative statutes of limitations Defendants propose.

As discussed above, Section 37-1-8 provides that actions for "an injury to the person" must be brought within three years, and Section 37-1-10 extends this limitations period to allow "minors and incapacitated persons . . . one year from and after the termination of such incapacity" in which to file suit.  N.M. Stat. Ann. §§ 37-1-8, 37-1-10.  The Court has already applied these provisions to Plaintiffs' federal claims in Section II.A.1., *supra*.  In that context, the Court found that there are genuine issues of material fact regarding whether Jane Does 2 and 4 timely filed their claims

---

[14] The New Mexico Supreme Court has addressed what time limitation applies to medical malpractice claims when applying the New Mexico Medical Malpractice Act's statute of repose to late-accruing claims would violate due process.  *Cahn v. Berryman*, 2018-NMSC-002, ¶¶ 24-26, 408 P.3d 1012, 1018.  The *Cahn* court declined to apply the "background statute of limitations" and instead "extend[ed] the repose period one year beyond the accrual date of the particular late-accruing claim at issue."  *Id.* at ¶ 26, 408 P.3d at 1018 (emphasis omitted).  No caselaw has applied *Cahn* to Section 41-4-15, which is a statute of limitations rather than a statute of repose.  *See id.* at ¶ 15, 408 P.3d at 1015; *Maestas*, 2007-NMSC-003 at ¶¶ 9-20, 141 N.M. at 157-60, 152 P.3d at 144-47.  Further, neither party has asked the Court to apply *Cahn* to Section 41-4-15 here.  And, even if the Court were to do so *sua sponte*, it would not change the outcome of Defendants' Motion.  *Cahn* held that "twelve months is a constitutionally reasonable period of time within which to file an accrued claim," and twelve months beyond the termination of legal disability is the alternative limitations period that the relevant "background statute of limitations" provides.  2018-NMSC-002 at ¶ 20, 408 P.3d at 1017; N.M. Stat. Ann. §§ 37-1-8, 37-1-10.  For these reasons, the Court need not decide whether to apply *Cahn* to Section 41-4-15 in this case.

under Section 37-1-10 because they were incapacitated until less than one year before filing suit.[15] This finding would apply with equal force to Plaintiffs' negligence claims under the NMTCA, if Sections 37-1-8 and 37-1-10 govern these claims in lieu of Section 41-4-15. As such, applying Sections 37-1-8 and 37-1-10 to Plaintiffs' negligence claims, as Defendants propose, requires denial of Defendants' Motion.

Section 37-1-30, in turn, provides that a plaintiff filing "[a]n action for damages based on personal injury caused by childhood sexual abuse" must file before "the latest" of either the person's twenty-fourth birthday, or three years after the person first disclosed the abuse to a medical or mental health care provider in the context of receiving health care from the provider.[16] N.M. Stat. Ann. § 37-1-30(A). Defendants do not dispute that Jane Doe 2's negligence claims would be timely filed under Section 37-1-30. However, Defendants contend that this statute of limitations would bar Jane Doe 4's negligence claims because she first disclosed Mr. Gregor's sexual abuse of her to a therapist when she was in middle school.

In so arguing, however, Defendants ignore Section 37-1-30's clear language that the applicable time limit is the *latest* of the two alternatives listed, *i.e.*, the plaintiff's twenty-fourth birthday or three years after the plaintiff's first disclosure of sexual abuse to a health care provider. *Id.* The parties agree that Jane Doe 4 was born on October 20, 1997, which means that she was not quite twenty years old when she filed suit on September 29, 2017 and will not have her twenty-fourth birthday until October 20, 2021. In these circumstances, Jane Doe 4's twenty-fourth birthday is the latest of the two alternatives listed in Section 37-1-30, and she filed her negligence

---

[15] Defendants do not address the alleged incapacity of Jane Does 2 and 4 in the section of their reply regarding Plaintiffs' negligence claims, nor do they explain the omission. However, they do address the alleged incapacity of Jane Does 2 and 4 at some length in the section of their reply regarding Plaintiffs' federal claims.

[16] Defendants do not dispute that this matter is "[a]n action for damages based on personal injury caused by childhood sexual abuse" within the meaning of Section 37-1-30.

claims well within the time this statute allows.  Thus, applying Section 37-1-30 to Plaintiffs' negligence claims also results in the denial of Defendants' Motion.

In sum, the Court finds that Defendants are not entitled to summary judgment on the negligence claims of Jane Does 2 and 4 on statute of limitations grounds and thus denies Defendants' Motion as to these claims.

## B.     Plaintiffs' Motion

In their Motion, Plaintiffs[17] seek two types of equitable relief, specifically, equitable estoppel and equitable tolling.[18] (Doc. 142 at 15.)  Defendants counter that Plaintiffs "have failed to assert any facts in support of their motion," and that the record evidence "make[s] clear that Plaintiffs cannot overcome their burden to trigger either equitable estoppel or equitable tolling." (Doc. 120 at 11.)  For the following reasons, the Court will deny Plaintiffs' Motion without prejudice.  Initially, Plaintiffs failed to support their Motion with any attachments or citations to record evidence, and the Court could deny the Motion for this reason alone.  (Doc. 102); *see* D.N.M. LR-Civ. 7.3(b) ("Movant must submit evidence, in the form of affidavits, deposition excerpts, or other documents, in support of allegations of fact.").  Although Plaintiffs did include attachments and citations to record evidence in their reply, the Court may not rely on these new materials to grant Plaintiffs' Motion unless it permits Defendants to file a surreply.  *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).  But even if Plaintiffs had timely submitted the materials attached to their reply, the Court would still deny Plaintiffs' Motion because the materials fail to establish all facts necessary to prove Plaintiffs' claims for equitable

---

[17] Plaintiffs do not expressly state that the relief they seek is on behalf of Jane Does 2 and 4 only.  (Doc. 102.)  However, both sides limit their substantive arguments and evidence regarding Plaintiffs' Motion to these two Plaintiffs.  (*Id.*; Docs. 120, 142, 143.)  The Court will therefore limit its analysis and ruling to Jane Does 2 and 4, as well.

[18] Fraudulent concealment, which the parties also address, is "a type of equitable tolling."  *Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 11, 373 P.3d 977, 981.

estoppel and equitable tolling. *See Little v. Baigas*, 2017-NMCA-027, ¶ 22, 390 P.3d 201, 209 (citation and internal quotation marks omitted) (party relying on a claim of equitable estoppel or equitable tolling "has the burden of establishing all facts necessary to prove it" under New Mexico law); *see also Roberts*, 484 F.3d at 1240 ("[T]he party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position.") (quoting *City of Carlsbad*, 1998-NMCA-144 at ¶ 8, 126 N.M. at 98, 966 P.2d at 1181).

As previously discussed, state law provides the statutes of limitations applicable to Plaintiffs' federal and state law claims and governs closely related tolling issues. *Varnell*, 756 F.3d at 1212-13; *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007). Accordingly, New Mexico law applies to Plaintiffs' request for equitable estoppel and equitable tolling of the statutes of limitation as to both Plaintiffs' federal and state law claims. *Roberts*, 484 F.3d at 1240. According to the New Mexico Supreme Court, the doctrines of equitable tolling and equitable estoppel "while related, apply in different circumstances." *Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 11, 373 P.3d 977, 981.

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence [s]he is unable to obtain vital information bearing on the existence of [her] claim. In contrast, the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.

*Id.* (citation omitted). The Court will address each of these doctrines in turn.

### 1. Equitable Estoppel

Equitable estoppel "precludes one party from asserting a right when another party has relied to his detriment upon the acts or conduct of the first party and when asserting that right would prejudice the other who has acted thereon in reliance." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 28, 115 N.M. 690, 697, 858 P.2d 66, 73, *holding limited on*

*other grounds by Davis v. Devon Energy Corp.*, 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75. New Mexico courts have identified the following elements of a claim for this type of equitable relief:

> [a]s related to the party estopped . . . (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts. As related to the party claiming estoppel, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such character as to change its position prejudicially.[19]

*Id.* at ¶ 28, 115 N.M. at 698, 858 P.2d at 74 (citation and internal brackets and ellipses omitted).

Plaintiffs argue that threats or intimidation by the party to be estopped may also support equitable estoppel. In ruling on claims governed by state law, this Court "must follow the most recent decisions of the state's highest court," and, when no controlling decision exists, "must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). The New Mexico Supreme Court has not addressed whether threats or intimidation may support an equitable estoppel claim. However, courts in other jurisdictions have found that "[a] defendant may be estopped from asserting the [s]tatute of [l]imitations as a defense where he or she has wrongfully induced the plaintiff to refrain from timely commencing an action by . . . threats or other misconduct." *Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370, 371 (N.Y. App. Div. 1994); *see also*, *e.g.*, *Murphy v. Merzbacher*, 697 A.2d 861, 866 (Md. App. 1997) (finding it "plausible" that threats or intimidation may support equitable estoppel); *John R. v.*

---

[19] Defendants argue that Plaintiffs must also show "exceptional circumstances" because New Mexico courts have imposed this requirement on equitable estoppel claims against "the State." *Waters-Haskins v. N.M. Human Servs. Dep't, Income Support Div.*, 2009-NMSC-031, ¶ 16, 146 N.M. 391, 397, 210 P.3d 817, 823. Because Plaintiffs have failed to prove their equitable estoppel claim on other grounds, the Court need not address whether Plaintiffs have satisfied this requirement.

*Oakland Unified Sch. Dist.*, 769 P.2d 948, 951 (Cal. 1989) ("[E]stoppel may certainly be invoked when there are acts of violence or intimidation that are intended to prevent the filing of a claim.") (emphasis omitted).

In *Doe v. Garcia*, the court noted that, "*[a]lmost* without exception, courts have universally rejected the theory that duress tolls the statute of limitations when duress is not an element of the underlying cause of action." 5 F. Supp. 2d 767, 770 (D. Ariz. 1998) (emphasis in original). To fall within the exception to which the *Doe v. Garcia* court referred, a plaintiff

> must do more than simply allege a subjective fear that retaliation might occur. A plaintiff must show some act or threat by the defendant that precluded the exercise of her free will and judgment and prevented her from exercising her legal rights. A plaintiff must show that a paramount authority prevented her from exercising her legal rights.

*Id.* at 770-71 (internal citation omitted) (finding plaintiff's claim of duress "sufficiently meritorious that it cannot be resolved by summary judgment").

In *Nolde v. Frankie*, in turn, the Arizona Supreme Court elaborated on the proof required to establish this type of equitable estoppel, describing four elements a plaintiff must show. 964 P.2d 477, 481-82 (Ariz. 1998) (en banc). "First, the plaintiff must identify specific promises, threats or inducements by the defendant that prevented the plaintiff from filing suit." *Id.* at 481. "Vague statements or ambiguous behavior by the defendant will not suffice." *Id.* Second, the plaintiff must show that "the defendant's promises, threats or representations actually induced the plaintiff to forbear filing suit." *Id.* This element requires an inquiry into the plaintiff's "subjective reasons" for failing to timely file suit. *Id.* Third, the plaintiff must show that "the defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action." *Id.* (emphasis in original). To establish this element, the plaintiff must show that the defendant's coercive conduct rose "to such a level that a person of reasonable firmness in the plaintiff's situation would have

been unable to resist." *Id.* Finally, the plaintiff must show that she filed suit "within a reasonable time after termination of the conduct warranting estoppel." *Id.*; *see also John R.*, 769 P.2d at 952 (to establish equitable estoppel based on coercion, plaintiff must have filed suit "within a reasonable time after the coercive effect of the threats had ended"). "Implicit in this requirement is the notion that the estoppel by inducement doctrine does not permit the indefinite and unlimited extension of the limitations period." *Nolde*, 964 P.2d at 482.

> Ordinarily, each of these inquiries will involve questions of fact, and therefore will be resolved by the factfinder. In some cases, however, a court appropriately may conclude as a matter of law that no reasonable jury could find for the plaintiff on one or more of these inquiries.

*Id.*

The Court predicts that the New Mexico Supreme Court would, like the courts in *Doe v. Garcia*, *Nolde*, *John R.*, *Zoe G.*, and *Murphy*, hold that a defendant's threats or intimidation may support a plaintiff's equitable estoppel claim. *See Plaza Nat'l Bank v. Valdez*, 1987-NMSC-105, ¶ 16, 106 N.M. 464, 467, 745 P.2d 372, 375 ("Equity has the inherent power to supply a method in any suit to protect the rights of all interested parties. . . . That the facts of a case are without reported precedent should be no deterrent to the granting of equitable relief."). First, as discussed above, Plaintiffs have identified several cases based on childhood sexual abuse in which courts have held that coercion may support an equitable estoppel claim, while Defendants have cited no cases to the contrary. Implicit in these decisions is that childhood sexual abuse is more likely than many other types of tortious misconduct to involve a perpetrator who exerts "a paramount authority" to deprive the victim of her free will and prevent her from exercising her legal rights. *Doe v. Garcia*, 5 F. Supp. 2d at 770. Second, as these courts have recognized, it seems beyond cavil that "acts of *violence* or *intimidation* that are *intended* to prevent the filing of a claim" are at least as inequitable as deception or concealment, where "actual fraud or the intent to mislead is not

essential." *John R.*, 769 P.2d at 951 (emphasis in original).  Finally, the four rigorous elements described in *Nolde* provide an appropriate means to balance the equities so that a defendant does not obtain an unfair advantage from coercion, but the salutary purposes of the statute of limitations defense are preserved.

Applying these elements to the present matter, Plaintiffs first claim that Defendants should be equitably estopped from relying on a statute of limitations defense because Mr. Gregor threatened and intimidated Jane Does 2 and 4.[20]  Plaintiffs have presented no evidence that Mr. Gregor ever threatened or intimidated Jane Doe 2 to prevent her from disclosing his sexual abuse of her.  Plaintiffs *have* presented evidence that Mr. Gregor threatened and intimidated Jane Doe 4 to keep her from disclosing his sexual abuse of her.   However, Plaintiffs have presented no evidence that Mr. Gregor's coercion actually prevented Jane Doe 4 from timely filing suit, and, on the current record, it seems unlikely that they will ever be able to so.  Although there is evidence that Mr. Gregor's coercion made Jane Doe 4 afraid to disclose the abuse, there is also evidence that she nevertheless made contemporaneous disclosures to peers and adults, and testified about the abuse in December 2010.  If Mr. Gregor's alleged threats and intimidation did not prevent Jane Doe 4 from disclosing and testifying about the abuse, it seems unlikely that they prevented her from timely pursuing her claims.  *See V.C. v. Los Angeles Unified Sch. Dist.*, 43 Cal. Rptr. 3d 103, 115 (Cal. App. 2006) ("Given that [the defendant's] threats did not serve as a deterrent to [plaintiff] reporting the abuse to the police, we cannot conclude that his threats served as a deterrent to her presenting a claim.").

---

[20] Plaintiffs also assert that Mr. Gregor's "grooming" of Jane Does 2 and 4 supports their equitable estoppel claim. Plaintiffs cite, and the Court has located, no caselaw holding that a defendant's grooming conduct, standing alone, may estop him from relying on a statute of limitations defense.  Moreover, the grooming at issue here appears to have consisted of "ambiguous behavior," which the *Nolde* court held cannot support an equitable estoppel claim.  964 P.2d at 481.  The Court will therefore reject Plaintiffs' argument on this point.  However, the Court notes that evidence of grooming may still be relevant in this case for other reasons, *e.g.*, to help explain Jane Doe 2's belief that she was responsible for the sexual abuse she experienced.

Also of note is the record evidence that Mr. Gregor's threatening and intimidating conduct toward Jane Doe 4 ceased at the end of the 2007-2008 school year. Further, the evidence regarding Jane Doe 4's contemporaneous disclosures and subsequent testimony about the abuse suggests that the coercive effect of this conduct, if any, was quite brief. Thus, on the current record, it appears that Jane Doe 4 filed suit long after Mr. Gregor's threats and intimidation, and the coercive effect thereof, had ended. *Nolde*, 964 P.2d at 481; *John R.*, 769 P.2d at 952. For all of these reasons, the Court declines to bar Defendants from using a statute of limitations defense based on Mr. Gregor's alleged coercion of Jane Does 2 and 4.

Plaintiffs next argue that Defendants should be estopped from relying on a statute of limitations defense based on Ms. Montoya's coercion of Jane Doe 4. In support of this argument, Plaintiffs have presented evidence that, after Jane Doe 4 told Ms. Montoya that Mr. Gregor was touching her inappropriately, Ms. Montoya came to Mr. Gregor's classroom and instructed his students not to make false accusations. Though not overtly threatening, this conduct could rise to the level of intimidation in light of Jane Doe 4's young age, Ms. Montoya's position of authority, the sensitive nature of Jane Doe 4's disclosure, and the public nature of Ms. Montoya's reprimand. However, Plaintiffs have again failed to present any evidence that Ms. Montoya's intimidation actually prevented Jane Doe 4 from timely filing suit, and again, the current record evidence shows that Jane Doe 4 filed suit long after the intimidation and its coercive effect ceased. As such, the Court will not estop Defendants from using a statute of limitations defense based on Ms. Montoya's alleged coercion of Jane Doe 4.

Plaintiffs also argue that Defendants should be estopped from using a statute of limitations defense based on Ms. Montoya's deception of Jane Doe 4's mother. To support this argument, Plaintiffs have presented evidence that Ms. Montoya deceived Jane Doe 4's mother by telling her

that she, Ms. Montoya, would report Mr. Gregor's sexual abuse of Jane Doe 4 to school authorities and the police, and that Jane Doe 4's mother should not tell anyone else about it. In addition, Plaintiffs have presented evidence that Jane Doe 4's mother believed Ms. Montoya when she said she would take care of it.

As related to Ms. Montoya, this evidence could establish "conduct which amounts to a false representation . . . of material facts," "intention that such conduct shall be acted upon by the other party," and "knowledge, actual or constructive, of the real facts." *Cont'l Potash, Inc.*, 1993-NMSC-039 at ¶ 28, 115 N.M. at 698, 858 P.2d at 74. It could also establish "lack of knowledge and of means of knowledge of the truth as to the facts in question" as to Jane Doe 4's mother, and possibly by extension as to Jane Doe 4, the party claiming estoppel. *Id.* It does not, however, establish Jane Doe 4's "reliance upon the conduct of the party estopped," nor does it demonstrate that either Jane Doe 4 or her mother acted or refrained from acting based on Ms. Montoya's alleged deception in such a way "as to change [her] position prejudicially." *Id.* In other words, there is no record evidence suggesting, much less proving, that Ms. Montoya's deception of Jane Doe 4's mother induced Jane Doe 4 or her mother to refrain from timely filing suit.

Finally, Plaintiffs argue that Defendants should be estopped from relying on a statute of limitations defense based on Ms. Montoya's concealment of information from Jane Doe 2's mother. In support of this argument, Plaintiffs have presented evidence that Ms. Montoya concealed material facts when she responded to Jane Doe 2's mother's complaint that her daughter was unhappy in Mr. Gregor's class. Telling Jane Doe 2's mother that her daughter just needed "to get used to it," (Doc. 143-7 at 2), instead of disclosing that Mr. Gregor had recently been accused of sexually abusing other female students, could establish "conduct which amounts to a false . . . concealment of material facts," "intention that such conduct shall be acted upon by the other

party," and "knowledge, actual or constructive, of the real facts" on Ms. Montoya's part. *Cont'l Potash, Inc.*, 1993-NMSC-039 at ¶ 28, 115 N.M. at 698, 858 P.2d at 74. This and other record evidence, if believed, could also establish "lack of knowledge and of means of knowledge of the truth as to the facts in question" as to Jane Doe 2. *Id.* Specifically, there is considerable evidence showing that Jane Doe 2 did not know that Mr. Gregor's sexual abuse of her was, in fact, abuse for which Mr. Gregor was to blame.

A more complex question is whether there is evidence tending to show that Jane Doe 2 reasonably relied on and refrained from timely filing suit because of Ms. Montoya's concealment of information from her mother. In general, it seems unlikely that a plaintiff would be able to show that she reasonably relied on a defendant's concealment of material facts from a third party, or that such concealment caused the plaintiff to refrain from timely filing suit. *See Varnell*, 756 F.3d at 1215 (rejecting plaintiff's theory that "concealment from her mother, who could have sued on her behalf when she was a minor, justifies equitable tolling" because "we fail to see how such alleged concealment could have delayed her suit once she reached majority"). Here, however, it is conceivable that Jane Doe 2 could make such a showing. Plaintiffs have submitted evidence that Jane Doe 2 was present when Ms. Montoya concealed Mr. Gregor's sexual abuse of other students from her mother and instead attributed her unhappiness and discomfort in Mr. Gregor's class to her needing to get used to it. In these circumstances, Plaintiffs may also be able to present evidence that Ms. Montoya's misleading statements contributed to Jane Doe 2's belief that she was responsible for Mr. Gregor's abuse, and that she reasonably relied on Ms. Montoya's statements and refrained from filing suit because of this belief. Evidence that Ms. Montoya's concealment of material facts prevented Jane Doe 2's mother from helping her daughter timely

discover Mr. Gregor's responsibility for the abuse could also support Jane Doe 2's equitable estoppel claim.

The Court will not foreclose the possibility that Jane Doe 2 may be able to show her entitlement to equitable estoppel based on Ms. Montoya's conduct if she presents evidence of the elements outlined above and a jury resolves the disputed material facts in her favor. However, at this time, Plaintiffs have presented insufficient evidence to establish all facts necessary to prove this claim. The Court denies Plaintiffs' Motion for equitable estoppel without prejudice to their ability to renew the motion at a later stage of the litigation. *Little*, 2017-NMCA-027 at ¶ 22, 390 P.3d at 209.

## 2. Equitable Tolling

Equitable tolling "is a non-statutory tolling principle that provides relief in cases when exceptional circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations." *Little*, 2017-NMCA-027 at ¶ 12, 390 P.3d at 207; *Snow v. Warren Power & Mach., Inc.*, 2015-NMSC-026, ¶ 24, 354 P.3d 1285, 1290; *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 13, 306 P.3d 524, 530. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Little*, 2017-NMCA-027 at ¶ 12, 390 P.3d at 207; *Slusser*, 2013-NMCA-073 at ¶ 16, 306 P.3d at 531. Here, Plaintiffs argue that the injuries Mr. Gregor's sexual abuse caused Jane Does 2 and 4, including Jane Doe 2's self-blame and Jane Doe 4's drug addiction, constitute extraordinary circumstances beyond these Plaintiffs' control that justify equitable tolling of the applicable statutes of limitations.[21]

---

[21] Plaintiffs also seek equitable tolling on the basis of fraudulent concealment.

> To toll a statutory limitations period under the doctrine of fraudulent concealment, the plaintiff must prove that (1) the defendant knew of the alleged wrongful act and concealed it from the plaintiff or

The Court agrees that the evidence previously discussed regarding Plaintiffs' alleged incapacity and Defendants' responsibility for it could, if believed, demonstrate extraordinary circumstances supporting equitable tolling by the Court. *See Roney v. Siri Singh Sahib Harbhajan Singh Yogi*, 1985-NMCA-052, ¶¶ 10-11, 103 N.M. 89, 91, 703 P.2d 186, 188 (reversing dismissal of plaintiff's complaint where plaintiff claimed that statute of limitations should be equitably tolled because "defendants concealed plaintiff's cause of action through mind and body control"); *cf. JM through Foley*, 2009 WL 10698495 at *4 (finding it "inappropriate" to allow the plaintiff to rely on "an equitable tolling exception . . . based *entirely* on mental incapacity, a tolling exception which is unequivocally precluded by the [NMTCA]" (emphasis added)). However, the Court cannot resolve the parties' factual disputes regarding Plaintiffs' alleged incapacity and its causes on Plaintiffs' Motion or at an evidentiary hearing. Rather, because these issues are also material to Plaintiffs' legal claims for statutory tolling, a jury must resolve them. *Blea v. Fields*, 2005-NMSC-029, ¶ 6, 138 N.M. 348, 352, 120 P.3d 430, 434 ("[W]hen equitable and legal claims present a common issue of fact which is material to the disposition of each claim, the legal claim must be submitted to a jury before the equitable claim is decided.").

Defendants argue that Plaintiffs are not entitled to equitable tolling as a matter of law because Jane Doe 4's drug addiction was within her control, and because Plaintiffs did not act diligently in pursuing their claims. In support of the first point, Defendants rely on a 1993 decision

---

had material information pertinent to its discovery which he failed to disclose, and (2) the plaintiff did not know, or could not have known through the exercise of reasonable diligence, of the cause of action within the statutory period.

*Estate of Brice*, 2016-NMSC-018 at ¶ 10, 373 P.3d at 981. "If tolled by fraudulent concealment, the statute commences to run again when the [plaintiff] discovers, or through the exercise of reasonable diligence should have discovered," the alleged wrongful act. *Tomlinson v. George*, 2005-NMSC-020, ¶ 13, 138 N.M. 34, 39, 116 P.3d 105, 110. However, Plaintiffs' evidence to date fits awkwardly with these elements, and in the Court's view is more appropriately addressed on a theory of equitable estoppel as discussed above.

in which the Eighth Circuit held that, because the plaintiff's "drug addiction was not truly beyond his control, we would not equitably toll the filing period." *Fears v. Kurt Mfg. Co.*, 986 F.2d 502, 502 (8th Cir. 1993) (per curiam). The *Fears* court did not further explain its ruling. *Id.* Such scant authority does not persuade the Court to decide this potentially complex fact question against Jane Doe 4 as a matter of law. In particular, the decision provides insufficient justification for the Court to discount Plaintiffs' evidence that Jane Doe 4's drug addiction was caused by Mr. Gregor's sexual abuse of her and was therefore, like the abuse itself, beyond her control.

As to the second point, in general, Defendants contend that Jane Does 2 and 4 did not act diligently because they did nothing to discover or pursue their claims for many years after Mr. Gregor sexually abused them. However, the number of years in which these Plaintiffs did nothing to pursue their claims is not particularly informative regarding whether they acted with reasonable diligence, given their youth and alleged incapacity. Moreover, the factual underpinnings of this contention are subject to dispute. Arguably, for example, Jane Doe 4 did diligently pursue her claims by disclosing Mr. Gregor's sexual abuse of her to adults on whom she could have reasonably expected to rely to preserve her rights, including her mother, Ms. Montoya, and the PED.

More specifically, Defendants argue that Jane Does 2 and 4 did not act diligently in pursuing their claims because they did not seek medical or mental health treatment for the injuries they suffered as a result of Mr. Gregor's abuse before they turned nineteen. If they had done so, Defendants claim, the treatment they received would have led to the timely discovery of their right to file suit. However, Jane Doe 4 testified that she disclosed Mr. Gregor's sexual abuse of her to a therapist when she was in middle school, thus refuting Defendants' claim that she did not seek mental health treatment for her injuries. Further, even if medical or mental health treatment could

have led Plaintiffs to the discovery of their legal rights, there is evidence that Plaintiffs' minority and psychological injuries prevented them from seeking treatment on their own and, in Jane Doe 2's case, from disclosing Mr. Gregor's sexual abuse to caregivers who could have sought it for her. Thus, Plaintiffs' alleged failure to seek medical or mental health treatment does not indicate that they acted less than diligently as a matter of law. In short, the Court will deny Plaintiffs' Motion for equitable tolling at this time but will not foreclose the possibility that Jane Does 2 and 4 may be able to show their entitlement to this relief at a later stage of the litigation, if a jury finds in their favor regarding their alleged incapacitation and its causes.

## III.   CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment on Jane Doe 2 and Jane Doe 4's Claims Based on Statute of Limitations (Doc. 72), and Plaintiffs' Motion to Estop Defendants from Use of the Affirmative Defense of the Statute of Limitations (Doc. 102), are DENIED.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent